

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-1998

# United States v. Murray

Precedential or Non-Precedential:

Docket 97-7196

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Murray" (1998). *1998 Decisions.* Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 13, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-7196

UNITED STATES OF AMERICA

v.

MICHAEL MURRAY,
          Appellant

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. No. 92-00200-04)

Argued: November 7, 1997

Before: BECKER, ROTH, Circuit Judges, and DIAMOND,
District Judge.*

(Filed May 13, 1998)

        DAVID A. RUHNKE, ESQUIRE
          (ARGUED)
        Ruhnke & Barrett
        47 Park Street
        Montclair, NJ 07042

Counsel for Appellant

_____

* Honorable Gustave Diamond, United States District Judge for the
Western District of Pennsylvania, sitting by designation.

        DAVID M. BARASCH, ESQUIRE
        United States Attorney
        WILLIAM A. BEHE, ESQUIRE
          (ARGUED)
        Assistant United States Attorney
        Office of the United States Attorney
        Federal Building
        225 Walnut Street
        P.O. Box 11755
        Harrisburg, PA 17108

        Counsel for Appellee

OPINION OF THE COURT

BECKER,** Chief Circuit Judge.

Michael Murray appeals for the second time from a judgment in a criminal case.1 In his first appeal, a panel of this court vacated one count of his conviction, affirmed two others, and remanded for resentencing on the affirmed counts. Murray now challenges the sentences imposed on remand. His appeal raises interesting and difficult questions concerning the contours of the so-called Sentencing Package Doctrine (the "doctrine") under the regime of the Sentencing Guidelines. Rejecting Murray's several contentions, we hold that the district court had the authority to resentence Murray on the affirmed counts; that there is no constitutional barrier to the district court imposing life sentences on those counts; that the district court did not abuse its discretion by departing from the applicable guideline range; and that the extent of the departure was reasonable. We therefore affirm the judgment.

_____

** Honorable Edward R. Becker, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on February 1, 1998.

1. We exercise jurisdiction pursuant to 28 U.S.C. S 1291.

2

I.

Murray was convicted following a jury trial of the intentional killing of Juan Carlos Bacallo in furtherance of a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. S 848(e)(1)(A); conspiracy to distribute in excess of five (5) kilograms of cocaine in violation of 21 U.S.C. SS 846 and 841(a)(1); and distribution of and possession with the intent to distribute cocaine in violation of 21 U.S.C. S 841(a)(1). On January 19, 1996, Murray was sentenced to a term of life imprisonment for the CCE-related murder and to two concurrent ten-year sentences on the drug counts.2 Murray timely appealed his convictions, and, in United States v. Murray, 103 F.2d 310 (3d Cir. 1997) (Murray I), a panel of this court reversed Murray's conviction on the murder charge on the ground of trial error.3 The panel was careful to indicate at various points that the errors did not require reversal of Murray's drug convictions. At the conclusion of the opinion, the panel stated:

> For the foregoing reasons, we reverse the judgment of conviction and sentence on the murder charge and remand for a new trial. We affirm the judgment of conviction as to the drug charges and remand for resentencing, if appropriate, on those counts.

103 F.2d at 323.

On remand, the government took the position that the district court could permissibly vacate the concurrent ten-year terms imposed on the two drug counts and resentence Murray to life imprisonment -- thus obviating the need (in practical terms) for a retrial on the murder charge. Murray objected to this procedure, but the district court proceeded with the resentencing. A revised presentence report ordered by the district court advised that the guideline level for Murray's drug offenses was 34, and that the murder of

_____

2. Murray was also ordered to pay restitution in the amount of $2,304.00 to the murder victim's family.

3. More specifically, the reversal was based upon the admission of evidence that the court determined to be inappropriate under Fed.R.Evid. 404(b) and 403, as well as evidence that contravened Fed.R.Evid. 608(b).

Bacallo was relevant conduct which could justify an upward departure pursuant to U.S.S.G. S 5K2.1 (Death); and S 5K2.8 (Extreme Conduct). On April 10, 1997, the district court departed upwards and resentenced Murray to two concurrent terms of life imprisonment on the drug counts and imposed a $10,000 fine.

At the resentencing, the district court gave the following reasons for its departure:

> The Court believes that there is clear and convincing evidence that the defendant committed murder. The killing of Juan Carlos Bacallo is relevant conduct associated with the defendant's offense of conviction and is an integral, aggravating circumstance not covered by the offense guideline.

> The most analogous guideline to this relevant conduct is United States Sentencing Guidelines S 2A1.1 and offense level 43. Further, the dangerousness of the defendant's conduct, his intent prior to the killing and the cruel nature of the killing present the need for a consequence and a departure under the United States Sentencing Guideline 5K.1 and section 5K2.8 for the loss of life caused by the defendant and his extreme conduct.

> An upward departure of nine levels is deemed reasonable, and the sentence imposed is considered necessary after consideration of the nature and seriousness of the offense and the need to afford an adequate deterrent as required by 18 U.S.C. S 3553.

In addition, the district court entered into the record an Addendum to Statement of Reasons for the departure wherein it stated:

> It is noted that because the drug convictions involved more than five kilograms of cocaine, 21 U.S.C. S 841(b)(1)(A) reflects that the Court must impose a sentence of no less than 10 years and can impose life imprisonment. While it appears that the court can not use the intentional killing in determining the defendant's guideline calculations, it is relevant conduct and can therefore be used in support of a

4

>           substantial upward depart at resentencing on the drug
>           counts. [See also United States v. Baird, No. 96-1342,
>           slip op. (3d Cir. March 19, 1997)]

This appeal followed. The government informed us at oral
argument that it does not intend to retry Murray on the
murder charge if the resentencing on the drug counts is
affirmed.

II.

Murray first contends that the district court was without
authority to resentence him on the drug counts. This
argument is foreclosed by this court's mandate in Murray I.
There the panel "affirm[ed] the judgment of conviction as to
the drug charges and remand[ed] for resentencing, if
appropriate, on those counts." 103 F.2d at 323. While the
wording of the mandate, and in particular the use of the
phrase if appropriate, may be imprecise, there is no doubt
that the prior panel vacated Murray's drug sentences and
remanded for the district court to at least consider
resentencing on the drug counts. Such a mandate does not
impose any additional restriction, other than those provided
by applicable statutes, constitutional provisions, and the
Guidelines, on a district court's ability to fashion de novo a
new sentence on remand.

Because of the mandate, Murray's claim that the district
court lacked the authority to resentence him reduces to an
attack on this court's authority, pursuant to 28 U.S.C.
S 2106 (1997), to vacate the sentences on the drug counts
and remand for resentencing. This argument is derived
from United States v. Busic, 639 F.2d 940 (3d Cir. 1981),
wherein we faced, inter alia, the question whether it was
permissible to vacate a sentence imposed on an
unchallenged count of a multicount conviction where the
conviction on another count was overturned. We
determined that "[i]n such a case, where the sentences were
interdependent, we believe an appellate court, vacating one
of those sentences, can vacate the other sentence even if its
imposition is not specifically raised on appeal." Id. at 947
(emphasis supplied); see also id. at 947 n.10.

5

Based on this language, which gave rise to what has since been termed the sentencing package doctrine, Murray argues that resentencing is inappropriate in this case since his drug sentences were ordered to be served concurrently to his murder sentence, and hence the sentences were not interdependent. This argument raises interesting and difficult questions regarding the breadth of the doctrine and its continued relevance in the era of Guideline sentencing. However, we need not reach these issues here.[4] Unlike the

_____

4. The sentencing package doctrine originated as a means of justifying the resentencing of a defendant on all counts of a multicount conviction where one or more counts were reversed on direct appeal. The rationale underlying the doctrine was that

> [w]hen a defendant is found guilty on a multicount indictment, there
> is a strong likelihood that the district court will craft a disposition
> in which the sentences on the various counts form part of an overall
> plan. When the conviction on one or more of the component counts
> is vacated, common sense dictates that the judge should be free to
> review the efficacy of what remains in light of the original plan, and
> to reconstruct the sentencing architecture upon remand, within
> applicable constitutional and statutory limits, if that appears
> necessary in order to ensure that the punishment still fits both
> crime and criminal.

United States v. Pimienta-Redondo, 874 F.2d 9, 14 (1st Cir. 1989). The sentencing package doctrine was deemed applicable when the sentences on the underlying counts were interdependent. See e.g., United States v. Shue, 825 F.2d 1111, 1114 (7th Cir. 1987). However, at the time the doctrine was announced, and throughout its early years of application, the Sentencing Guidelines were not yet in place. In the pre-Guidelines era, the determination whether particular sentences arising from a multicount indictment were truly "interdependent" did not cause some courts much concern, as they apparently assumed that interdependence was a necessary by-product of the virtually unfettered sentencing discretion of the district court. Other courts, however, still expressed concern about the application of the doctrine in the context of concurrent sentences, as we discuss infra.

The question of interdependence is more complex under the Guidelines. As several of our sister circuits have noted, the Guidelines have eliminated much of the district court's discretion at sentencing, thereby altering, though not necessarily eliminating, the concept of a sentencing package. See United States v. Rodriguez, 112 F.3d 26, 30 (1st Cir. 1997); United States v. Smith, 103 F.3d 531, 534 (7th Cir. 1996). In

defendant in Busic, Murray did challenge his conviction on
the drug counts. The Murray I panel's authority to remand
for resentencing on those counts thus stems directly from

(Text continued on page 9)
_____

some instances the change has not been that dramatic-- the Guidelines
have simply shifted the power to create an appropriate sentencing
package from the district court to the Guidelines themselves. An example
of this phenomenon is provided by the facts of United States v. Davis,
112 F.3d 118 (3d Cir. 1997), which is representative of the cases
applying the doctrine post-Guidelines.

In Davis, the defendant had been convicted of several drug counts and
one count of using a firearm during and in relation to a drug trafficking
crime in violation of 18 U.S.C. S 924(c). A conviction under S 924(c)
requires, as a matter of law, the imposition of afive year sentence to be
served consecutively to any other term of imprisonment associated with
an underlying drug count. See 18 U.S.C. S 924(c)(1). Moreover, under
U.S.S.G. S 2D1.1(b)(1), the base offense level for crimes involving drugs
must be increased by two levels if "a dangerous weapon (including a
firearm) was possessed." U.S.S.G. S 2D1.1(b)(1). The Guidelines further
direct that this enhancement should not be applied when a sentence
under S 924(c) is also imposed. See U.S.S.G. S 2K2.4, Commentary
Background. Following the Supreme Court's decision in Bailey v. United
States, 516 U.S. 137 (1995), which narrowed the definition of the word
"use" in S 924(c), Davis moved under 28 U.S.C. S 2255 seeking to vacate,
set aside, or correct his sentence. The district court vacated the S
924(c)
sentence and ordered resentencing on the remaining counts. See Davis,
112 F.3d at 120. Davis appealed the district court'sfinding of
jurisdiction to recalculate his aggregate sentence, claiming that the
court's authority under S 2255 to "correct the sentence" only extended to
the specific sentence underlying his conviction under S 924(c).

We disagreed, finding "jurisdiction based on the interdependence of the
counts for Guideline sentencing purposes." Id. at 121. We explained our
holding as follows:

> Clearly, the S 924(c) offense and the underlying offense are
> interdependent and result in an aggregate sentence, not sentences
> which may be treated discretely. If the district court were to
vacate
> the term associated with the S 924(c) count and not resentence on
> the remaining counts, Davis would not receive the two level
> enhancement required for the remaining counts under the
> Sentencing Guidelines and his sentence would not be in conformity
> with the law.

Id. at 121 (citations omitted).

The scenario in Davis provides a clear example of interdependence under the Guidelines since it is evident that the particular guidelines themselves "contemplate[d] an interdependent relationship between the sentence for the vacated conviction and the sentence for the remaining convictions -- a sentence package . . . ." Rodriguez, 112 F.3d at 30. The relationship between Murray's original sentences on the murder count and the drug counts is not analogous to that at issue in Davis since the guidelines applicable to these counts do not expressly contemplate interdependent sentences. Indeed, there was no barrier to the district court imposing, at the original sentencing, concurrent life terms on all counts. Nonetheless, the government makes a plausible argument that Murray's original sentences were interdependent because the district court structured those sentences in order to punish Murray for the intentional killing of Bacallo as part of his drug trafficking crimes. Thus, the government submits that the removal of the murder conviction and the attendant life sentence affected the court's sentencing package. This approach is supported by the district court's Addendum to Statement of Reasons wherein the court explains how its sentencing intention had been affected by the vacatur of the murder conviction and the life sentence.

The government's argument is rooted in the notion of the sentencing package doctrine as it existed pre-Guidelines. The government contends that interdependence arises from the district court's discretion in crafting an overall sentence designed to punish the criminal and his conduct rather than from the workings of the Guidelines. Aside from the possibility that this argument, predicated on a sentencing court's discretion, may be foreclosed by the Guidelines, it is not apparent that the elastic notion of interdependence that the government advocates has ever been supportable under the sentencing package doctrine. Even pre-Guidelines, courts expressed concern with the application of the doctrine to concurrent sentences. See McClain v. United States, 676 F.2d 915, 918 (2d Cir. 1982)(McClain II) (applying the doctrine but emphasizing that "[c]onsecutive sentences were mandatory in this case under section 924(c) and the sentences were truly interdependent" and cautioning that the opinion was not "addressed to a situation involving concurrent or non-interlocking sentences. Where the sentencing judge could have insured against invalidation of a longer term by imposing a higher sentence for the other offense, vacatur of the shorter term might well be inappropriate . . . ."). This concern continues post-Guidelines. See United States v. Gordils, 117 F.3d 99, 104 (2d Cir. 1997) (holding that McClain II is still good law post-Guidelines); United States v. McKnight, 17 F.3d 1139, 1145 (8th Cir. 1994) (vacating each of three defendants'

8

28 U.S.C. S 2106, which we set forth in the margin.5 The authority granted by S 2106 is discretionary, and while the jurisprudence of sentencing, including the concepts underlying the sentencing package doctrine, serves as a guide to courts in making the determination whether remand is appropriate, the courts of appeals are not bound to apply these concepts in determining whether to remand for resentencing on counts "lawfully brought before [them] for review." Here, the panel did not state the reasons supporting its decision to remand the drug counts for resentencing. However, even if it had, and we disagreed with those reasons, the fact is that it has done so, and we are without authority on this appeal to substitute our views for those of the Murray I panel.

III.

Turning to the legality of the life sentences imposed on remand, we find Murray's arguments that his resentencing violates his due process rights and the prohibition against double jeopardy to be without merit.6 Murray's due process

_____

convictions on a false misrepresentation count, but determining that remand for resentencing on that count was unnecessary since the sentences "were ordered to be served concurrently to the sentences on the other counts, now affirmed").

As the foregoing makes clear, the application of the sentencing package doctrine to the concurrent sentences involved in this case is by no means a foregone conclusion. However, as we explain, this case does not turn on an application of the sentencing package doctrine, and thus we intimate no view on whether the government's broad conception of interdependence is ultimately supportable -- leaving that decision to another day.

5. "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. S 2106 (emphasis supplied).

6. We exercise plenary review over challenges to the legality of a sentence imposed by a district court. See United States v. Woods, 986 F.2d 669, 673 (3d Cir. 1993).

claim is predicated on North Carolina v. Pearce, 395 U.S. 711 (1969). However, since his new sentences on the drug counts do not exceed the total length of his original sentence, and we find no evidence of vindictiveness on the part of the sentencing court, we reject this claim. See Kelly v. Neubert, 898 F.2d 15, 16 (3d Cir. 1990). Murray's double jeopardy claim is foreclosed by the fact that there can be no legitimate expectation of finality in a sentence and conviction which the defendant appeals. See United States v. Shue, 825 F.2d 1111, 1115 (7th Cir. 1987) (citation omitted); see also Pennsylvania v. Goldhammer, 474 U.S. 28, 30 (1985) (double jeopardy clause does not bar resentencing on counts affirmed on appeal when a sentence of imprisonment on another count is vacated).

IV.

Finally, Murray argues that the nine-level upward departure to a base offense level of 43 was not reasonable and should be reduced by this court.7 We disagree. The district court properly followed the course charted in United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), for determining the appropriateness and extent of an upward departure. The district court found that the United States established by clear and convincing evidence that Murray had intentionally killed Bacallo, and that this relevant conduct associated with Murray's offenses of conviction was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. See 18 U.S.C. S 3553(b) (1997); Kikumura, 918 F.2d at 1101 (fact finding underlying departure of such magnitude that the sentencing hearing can fairly be characterized as a`tail which wags the dog of the substantive offense' must be established at least by clear and convincing evidence). Having determined that a departure was appropriate, the

_____

7. We also exercise plenary review over the district court's construction of the Sentencing Guidelines. See United States v. Bethancourt, 65 F.3d 1074, 1080 (3d Cir. 1995), cert. denied, 116 S. Ct. 1032 (1996). However, the decision to depart under the Guidelines is reviewed for abuse of discretion, and deferential review is accorded to the extent of the departure. See United States v. Baird, 109 F.3d 856, 870, 872 (3d Cir. 1997) (upward departure).

10

district court then properly turned to the Guidelines themselves to determine the extent of that departure. See id. at 1110-14 (setting out an "analogy to the Guideline approach" for determining the reasonableness of upward departures). Finding nothing infirm in the analogy applied, we determine that the nine level departure was reasonable.

The judgment of the district court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit