WILEY GENE WILSON, AKA JOHN RAYMOND KRUIDENIER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 46942

November 21, 2007                              170 P.3d 975

---

*Joel Martin Mann*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *James Tufteland*, Chief Deputy District Attorney, and *Thomas M. Carroll*, Deputy District Attorney, Clark County, for Respondent.

Before the Court EN BANC.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether Nevada's double jeopardy protections prohibit increasing a defendant's sentence after the defendant's conviction has been partially vacated on appeal. We first considered a similar issue in *Dolby v. State*, where we held: "When a court is forced to vacate an unlawful sentence on one count, the court may not increase a lawful sentence on a separate count."[1] We now conclude that the double jeopardy protections articulated in *Dolby* apply with equal force regardless of the procedural posture in which the resentencing occurs—whether in the context of error correction in the district courts or in remanded proceedings.

Accordingly, we conclude that the sentencing procedure employed by the district court violated appellant's constitutional right against double jeopardy. We therefore vacate the amended judgment of conviction and remand to the district court with instructions to reinstate the portions of Wilson's original sentence that we previously affirmed on direct appeal.

### FACTS AND PROCEDURAL HISTORY

In July 2003 appellant Wiley Gene Wilson was convicted of four counts of using a minor in the production of pornography and four counts of possession of a visual presentation depicting sexual conduct of a person under 16 years of age. Wilson was sentenced to 4 terms of 24 to 72 months on the possession charges to run concurrently with 4 consecutive terms of 10 years to life on the production charges. On direct appeal, this court reversed three

---

[1]106 Nev. 63, 65, 787 P.2d 388, 389 (1990).

of the four production convictions because all four convictions arose out of a single criminal act. We then remanded the case for resentencing.[2]

In February 2006 Wilson appeared before the district court for resentencing. At that time, the district court modified the sentences pertaining to Wilson's remaining convictions in two ways. First, the district court increased the minimum sentence for each possession conviction from 24 months to the statutory maximum, 28 months. Second, the district court ruled that Wilson's possession sentences should run consecutively—instead of concurrently, as specified in the original sentencing hearing—with his sentence on the one remaining production count. This appeal followed.

## DISCUSSION

On appeal, Wilson argues that the district court violated his right against double jeopardy by increasing the sentences associated with those counts of his conviction affirmed on direct appeal. For the following reasons, we agree.[3]

### Double jeopardy

Under Article 1, Section 8(1) of the Nevada Constitution, "[n]o person shall be subject to be twice put in jeopardy for the same offense."[4] Interpreting the federal Double Jeopardy Clause in *Dolby v. State*, we concluded that "[w]hen a court is forced to vacate an unlawful sentence on one count, the court may not increase a lawful sentence on a separate count."[5] Relying on our conclusion in *Dolby*, Wilson claims that the district court violated his right against double jeopardy when it increased the minimum sentences associated with the possession counts and ran them consecutively with his sentence on the one remaining production count. In response, the State urges this court to abandon *Dolby*. While it acknowledges the apparent effect of *Dolby*'s heightened double jeopardy protections in the resentencing context, the State invites this court to reconsider our jurisprudence on the issue. The State argues that the United States Supreme Court has eroded double

---

[2]*Wilson v. State*, 121 Nev. 345, 358, 114 P.3d 285, 294 (2005).

[3]Wilson also contends that the district court violated his due process rights by vindictively increasing his sentence as punishment for maintaining a successful appeal. Because we agree with Wilson's double jeopardy argument, it is unnecessary to address his due process argument.

[4]*Cf.* U.S. Const. amend. V (no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb").

[5]106 Nev. at 65, 787 P.2d at 389.

jeopardy protections in the last half century and, as a result, the basic underpinnings of *Dolby* are no longer good law.[6]

We disagree with the State's position and take this opportunity to renew our commitment to strong double jeopardy protections. Accordingly, we decline the State's invitation to abandon *Dolby* in favor of a less robust rule.

### Rejection of United States v. DiFrancesco and "sentencing package doctrine"

On appeal, the State proffers an alternative rule to replace *Dolby*. Specifically, the State urges this court to hold that when a defendant successfully challenges part of a multicount conviction on direct appeal, the district court may effectuate its original sentencing intent by increasing the sentences associated with the remaining counts without violating double jeopardy, provided that, considered in the aggregate, the duration of the new sentences does not exceed the original punishment. For the following reasons, we reject this approach.[7]

The United States Supreme Court first considered the application of the Double Jeopardy Clause to sentencing in its landmark 1874 decision in *Ex Parte Lange*.[8] The defendant in *Lange* was convicted of stealing federal mail bags, a crime punishable by either a fine or a prison term. Lange, however, was both fined and sentenced to prison. The Supreme Court reversed, reasoning that once Lange suffered one of the punishments permitted under the statute, "the power of the court to punish further was gone."[9]

In its 1931 decision in *United States v. Benz*, the Supreme Court extended *Lange* in influential dicta to constitutionally prohibit *increasing* a sentence after a defendant had begun to serve it.[10] Between 1947 and 1980, however, the Supreme Court gradually retreated from this prohibition.[11] In *North Carolina v. Pearce*, for example, the Court noted that when a defendant successfully ap-

---

[6]*See Pennsylvania v. Goldhammer*, 474 U.S. 28, 30 (1985); *United States v. DiFrancesco*, 449 U.S. 117, 138-39 (1980).

[7]The historical discussion that follows owes much to the Supreme Court of Delaware's excellent survey of the issue in *White v. State*, 576 A.2d 1322, 1324-28 (Del. 1990).

[8]85 U.S. 163 (1874).

[9]*Id.* at 176.

[10]282 U.S. 304, 307-08 (1931).

[11]*See DiFrancesco*, 449 U.S. 117; *North Carolina v. Pearce*, 395 U.S. 711, 721 (1969); *Bozza v. United States*, 330 U.S. 160, 166-67 (1947) (no double jeopardy violation where trial court resentenced defendant to more severe punishment where initial sentence was less than the statutory minimum).

peals a conviction and obtains a new trial, "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean."[12] Accordingly, the Court held that a trial court may, under most circumstances, impose a more severe sentence after reconviction without violating double jeopardy.[13]

In *United States v. DiFrancesco*, ten years before this court's decision in *Dolby*, the United States Supreme Court finally abandoned the *Lange-Benz* rationale. In *DiFrancesco*, the Court held that the Double Jeopardy Clause proscribed resentencing only when defendants have developed a legitimate expectation of finality in their original sentence.[14]

Applying *DiFrancesco*, the majority of federal circuits have concluded that defendants waive any expectation of finality in a given sentence when they exercise their right to an appeal.[15] In effect, when defendants challenge one of several interdependent sentences (or underlying convictions) on appeal, they have challenged the entire sentence.[16] Consequently, following a partially successful appeal, a defendant has no legitimate expectation of finality in any remaining portion of the sentence.[17] As such, federal courts now generally recognize that when a defendant has successfully appealed part of a conviction, "the Double Jeopardy Clause does not preclude increasing the sentence on the remaining offense to effectuate the sentencing judge's original intent, even though the defendant has already begun serving the sentence."[18]

In addition, federal courts have "read into the statutory authorization of direct appeal and subsequent resentencing" the "concept of a sentencing 'package.' "[19] Under the sentencing "package" doctrine, courts treat the penalties imposed on multiple counts as individual components of a single, comprehensive sentencing

---

[12]395 U.S. at 721.

[13]*Id.*

[14]449 U.S. at 135.

[15]*United States v. Bello*, 767 F.2d 1065, 1070 (4th Cir. 1985); *see also U.S. v. Bentley*, 850 F.2d 327, 329 (7th Cir. 1988); *U.S. v. Shue*, 825 F.2d 1111, 1115 (7th Cir. 1987); *United States v. Crawford*, 769 F.2d 253, 257 (5th Cir. 1985); *McClain v. United States*, 676 F.2d 915, 918 (2d Cir. 1982); *United States v. Busic*, 639 F.2d 940, 950 (3d Cir. 1981).

[16]*See Busic*, 639 F.2d at 947 n.10.

[17]*Shue*, 825 F.2d at 1115.

[18]*Bello*, 767 F.2d at 1070; *see also Bentley*, 850 F.2d at 329; *Crawford*, 769 F.2d at 257; *McClain*, 676 F.2d at 918; *Busic*, 639 F.2d at 950.

[19]*U.S. v. Handa*, 122 F.3d 690, 692 (9th Cir. 1997). The "sentencing package" concept generally applies equally to the district courts' resentencing authority on remand, federal appellate authority under 18 U.S.C. § 3742, and

plan.[20] Federal courts are therefore entitled to let composite sentences in multicount convictions stand or fall in the aggregate. As such, they have the authority to revise even the unchallenged portions of a sentencing "package" without running afoul of double jeopardy.[21]

In *Shue v. United States*, the Seventh Circuit Court of Appeals described this trend as a necessary response to the "practical realities of present sentencing," particularly, sentence interdependence in the context of multicount convictions.[22] According to the *Shue* court, partial reversal of such a conviction on appeal unbundles the sentencing package and "renders [it] ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions."[23] At resentencing, therefore, federal district courts may reconstruct a new aggregate sentence on surviving counts to ensure " 'that the punishment still fits both crime and criminal.' "[24]

There are, however, two features that make the sentencing "package" doctrine uniquely adapted to federal sentencing law. First, the doctrine appears to have complemented the determinate sentencing goals of the Federal Sentencing Guidelines' previously mandatory regime.[25] Under that regime, a sentencing "package" was partly predicated on a base offense level, which determined the applicable Guidelines range. Thus, partially overturning a conviction on appeal risked unraveling the computations underlying the base offense level and, in effect, "unbundling" the sentencing package. In such a case, the resentencing court was *required* to recompute the base offense level in light of the remaining counts and revise the entire sentencing package accordingly. Second, the doctrine's use appears to have been even more discrete under the Guidelines system. In particular, it acted as the predominant ra-

---

habeas petitions for sentence corrections under 28 U.S.C. § 2255. In each context, the reviewing court is authorized to vacate an entire sentencing "package" based on a single error in one of the package's component parts. *Id.*

[20]*See State v. Saxon*, 846 N.E.2d 824, 827 (Ohio 2006).

[21]Notably, these courts have recognized two critical limitations on the district court's power to resentence after a successful appeal. First, the increased sentence associated with any particular conviction must fall within statutory limitations. *Shue*, 825 F.2d at 1115. Second, as the *Shue* court recognized, a defendant possesses a legitimate expectation that, after appeal, he will not be subject to "a greater sentence than that previously imposed as punishment for appealing his conviction." *Id.* Consequently, a district court may not resentence a defendant to a greater aggregate sentence after a successful appeal.

[22]825 F.2d at 1114.

[23]*Id.*

[24]*U.S. v. Murray*, 144 F.3d 270, 273 n.4 (3d Cir. 1998) (quoting *U.S. v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989)).

[25]*See United States v. Booker*, 543 U.S. 220 (2005) (rendering the Federal Sentencing Guidelines advisory).

tionale for substituting a two-level firearm enhancement at resentencing for a vacated 18 U.S.C. § 924(c) firearm conviction, and for resentencing after setting aside convictions which were structurally dependent on predicate offenses for their commission.[26]

### Nevada double jeopardy jurisprudence

While we recognize certain divergent developments in federal double jeopardy jurisprudence and sentencing law, today we reaffirm our commitment to the traditional rule articulated in *Dolby*: "When a court is forced to vacate an unlawful sentence on one count, the court may not increase a lawful sentence on a separate count."[27]

In *Dolby*, the defendant was convicted of the attempted murder of an elderly man and sentenced to ten years in prison. The district court also imposed a ten-year enhancement based upon the age of the victim, leading to a total sentence of 20 years. After the sentencing hearing, Dolby brought a motion to correct the sentence, alleging that the enhanced penalty for the attempted murder charge was unlawful. The district court granted the motion and vacated the enhanced penalty, but the court then resentenced Dolby to 20 years on the primary offense of attempted murder.[28]

Dolby argued on appeal that the district court violated his double jeopardy rights when it increased the sentence associated with his attempted murder conviction. Relying upon the *Lange-Benz* rationale, we held that a trial court cannot resentence a defendant to an increased term once the defendant has begun serving the initial sentence.[29] Accordingly, we determined that the increased sentence for attempted murder violated double jeopardy.[30]

---

[26]*See U.S. v. Barron*, 127 F.3d 890, 895 (9th Cir. 1997) ("'[S]entence package' concept has been primarily invoked to explain why courts may *resentence* on remaining counts of conviction after setting aside a section 924(c) conviction."), *withdrawn*, 138 F.3d 809 (9th Cir. 1998), *rev'd*, 172 F.3d 1153 (9th Cir. 1999) (en banc). 18 U.S.C. § 924(c) imposes a mandatory minimum sentence on any person who uses, carries, or possesses a firearm "during and in relation to any crime of violence or drug trafficking crime" to run consecutively with the underlying counts. In this sense, "the § 924(c) offense and the underlying offense are interdependent and result in an aggregate sentence, not sentences which may be treated discretely." *U.S. v. Davis*, 112 F.3d 118, 121 (3d Cir. 1997). Accordingly, federal courts have recognized that, in the context of § 924(c) offenses, which are structurally dependent on predicate offenses involving violence or drug trafficking, "the idea of the 'sentencing package' remains a perfectly viable concept." *U.S. v. Smith*, 103 F.3d 531, 535 (7th Cir. 1996).

[27]106 Nev. at 65, 787 P.2d at 389.

[28]*Id.* at 64-65, 787 P.2d at 388-89.

[29]*Id.* at 65, 787 P.2d at 389.

[30]*Id.*

The State urges this court to reconsider *Dolby* because the reasoning underlying the rule it articulates is no longer good law. We disagree and continue to adhere to *Dolby* for three principal reasons.

The first reason is chronology. This court decided *Dolby* in 1990, a decade after the United States Supreme Court issued its *DiFrancesco* opinion, overruling *Lange* and *Benz*. Moreover, the *Dolby* court cited *Lange*, *Chandler v. United States*,[31] and *Kennedy v. United States*,[32] notwithstanding that *DiFrancesco* purported to overrule these federal cases.[33] This reliance on cases that formerly underpinned the greater double jeopardy protections that obtained before *DiFrancesco* strongly indicates that the *Dolby* court deliberately sought to reserve those protections in the face of *DiFrancesco*'s dismantling influence. We conclude that *Dolby* operates as an implicit rejection of *DiFrancesco*.

Second, states are free to provide additional constitutional protections beyond those provided by the United States Constitution.[34] In *Miranda v. State*, for example, this court specifically noted that the showing of necessity required to correct an illegal sentence without violating the Double Jeopardy Clause was more heightened under the Nevada Constitution than its federal counterpart.[35] In other contexts, this court has noted that Nevada law embraces a more expansive interpretation of constitutional rights than federal law.[36] Viewed in this light, our decision to continue to adhere to *Dolby* is consistent with our past practice of affording more citizen protections under the Nevada Constitution than are afforded under the federal Constitution.

Third, while the State summarizes the enervation of double jeopardy protections at the federal level, it fails to offer sound reasons for similarly depleting those protections in Nevada. Most notably, the State fails to offer the very arguments that we would expect to accompany the request for such a change in this court's double jeopardy jurisprudence. For instance, the State fails to

---

[31]468 F.2d 834 (5th Cir. 1972).

[32]330 F.2d 26 (9th Cir. 1964).

[33]106 Nev. at 65, 787 P.2d at 389.

[34]*California v. Ramos*, 463 U.S. 992, 1014 (1983) ("States are free to provide greater protections in their criminal justice system than the Federal Constitution requires.").

[35]114 Nev. 385, 387, 956 P.2d 1377, 1378 (1998).

[36]*See Ennis v. State*, 122 Nev. 694, 704, 137 P.3d 1095, 1102 (2006) (Nevada law may allow for greater retroactive application of new rules than federal law).

argue that the "practical realities" of sentencing in Nevada have somehow reached extremes of complexity analogous to federal sentencing law. Neither does the State argue that Nevada has ever adhered to the sentencing "package" doctrine in its federal form. The State has therefore failed to convince this court that the same predicates exist in Nevada for overturning *Dolby* that, at the federal level, reinforced the paradigm shift in federal sentencing law following *DiFrancesco*. We hesitate to trade Nevada's double jeopardy protections for a divergent approach whose applicability to Nevada the State has far from completely explained.[37]

For these three reasons, we conclude that the rule enunciated in *Dolby* reflects the heightened citizen protections traditionally afforded under the Nevada Constitution.[38] Accordingly, we reaffirm the core holding of *Dolby* and decline the State's invitation to alter our double jeopardy jurisprudence.[39]

### Application of Dolby to Wilson's resentencing

Applying *Dolby* to this case, we conclude that the district court's modification of Wilson's sentence unconstitutionally increased the lawful sentences on those counts which we affirmed on appeal. Initially, the district court sentenced Wilson to 4 terms of 24 to 72 months on the possession counts to run concurrently with 4 consecutive terms of life with the possibility of parole after 10 years on the production counts. Under this sentence, Wilson faced an aggregate minimum sentence of 40 years to life. After this court vacated the three production counts, four possession counts and one production count remained. Thus, Wilson should have been sentenced to an aggregate minimum sentence of ten years on all re-

---

[37]*Cf. Saxon*, 846 N.E.2d at 827-28 (rejecting the "sentencing package doctrine" as "mak[ing] good sense . . . [under] the Federal Sentencing Guidelines," but as incompatible with Ohio's sentencing statutes).

[38]*See Miranda*, 114 Nev. at 387, 956 P.2d at 1378.

[39]Separately, the State argues that *Dolby* is largely confined to its facts and does not extend to resentencings mandated on appeal. We disagree and reject the State's invitation to adopt such a narrow interpretation of *Dolby*. To the extent that confusion existed previously on this point, we now clarify that the double jeopardy protections in *Dolby* extend to resentencings mandated on appeal with the same force that they apply to sentencing corrections initiated *sua sponte* in the district courts.

In support of its limited reading of *Dolby*, the State cites *Kennedy v. United States* for the proposition that district courts have full resentencing authority following an appeal unless specifically directed otherwise in our orders for remand. 330 F.2d at 26-27. We disagree. We decline to follow the obvious implication of the State's argument that this court should physically outline the limits of the district courts' sentencing discretion in our orders for remand.

maining counts.[40] On remand, however, the district court increased the minimum sentence on the remaining possession counts from 24 to 28 months to run consecutively with one another and with the 10-year term on the remaining production count. After resentencing, Wilson faced an aggregate minimum sentence of 19 years and 4 months. Even though the resentencing did not lead to a harsher result than Wilson's original sentence, the district court individually increased the minimum terms on each of the remaining possession counts and restructured the relationship between the possession counts and the lone production count. We conclude that *Dolby* forbids this sentencing procedure.

## CONCLUSION

We conclude that the core holding of *Dolby* continues to embody the double jeopardy policy followed in this state. We further extend *Dolby* to apply to resentencings mandated on appeal. Accordingly, we conclude that, in this case, the district court's resentencing on the lawful portions of Wilson's conviction surviving direct appeal violated Wilson's rights against double jeopardy. We therefore vacate Wilson's amended sentence and remand this matter for resentencing consistent with this opinion.[41]

MAUPIN, C. J., GIBBONS, HARDESTY, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[40]This minimum aggregate sentence results from running Wilson's one term of ten years to life on the production count concurrently with Wilson's four two-year terms on the possession counts (which run concurrently with one another).

[41]Separately, NRAP 28 requires parties before this court to cite the authorities supporting their legal contentions. Despite this rule, however, pages 5 through 9 of the State's answering brief present a word-for-word reproduction of the opinion in *White v. State*, replicating even that opinion's typographical errors. *See* 576 A.2d at 1324-27. We can only conclude that this degree of similarity is not coincidental. Thus, we urge the State to consider NRAP 28 before it reproduces arguments and primary authority in the future without attribution.