**UNITED STATES of America**

v.

**Harold MCCOY, III, Appellant.**

**No. 06–3159.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 7, 2008.

Filed April 8, 2008.

---

Louis D. Lappen, Office of United States Attorney, Philadelphia, PA, for United States of America.

Mark E. Cedrone, Cedrone & Janove, Philadelphia, PA, for Appellant.

Before: BARRY, JORDAN and HARDIMAN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Appellant Harold J. McCoy, III, appeals from a sentence of imprisonment of 162 months on the ground that the District Court impermissibly granted the government's motion for an upward departure. He also urges us to consider certain arguments he makes *pro se* despite the fact that he is represented by counsel. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We will affirm.

### I.

Because we write primarily for the parties, we set forth only those facts pertinent to our analysis. McCoy conducted a rather extensive identity fraud scheme in which he and two co-defendants used the identities of more than 40 victims to conduct over 170 illegal transactions that netted the group about $270,000 in cash and merchandise. Among the victims of the conspiracy was the Penn–Jersey Region of the American Red Cross. One of McCoy's co-defendants, a data entry clerk at this regional office of the Red Cross, gave McCoy the identities of blood donors who had participated in corporate blood drives at Merck and Siemens.[1] When the conspiracy was exposed, Merck and Siemens,

---

1. Merck is a pharmaceutical company and Siemens is a technology company.

who regularly sponsored corporate blood drives, refused to sponsor any drives in the future because of their employees' fears that their identities would be put at risk. Other corporate groups either cancelled their sponsorships or saw the participation in the blood drives they continued to sponsor substantially decline. As a result, the Red Cross lost many hundreds of pints of blood in donations, leading to a crisis that eventually forced the Penn–Jersey regional office to purchase blood from other Red Cross regional offices at a cost of over $400,000.

McCoy pleaded guilty to counts of conspiracy, interstate transportation of counterfeit securities, bank fraud, and uttering and possessing counterfeit securities. The parties stipulated to a number of sentencing guidelines issues in the plea agreement, including a stipulation that the victims of the scheme other than the Red Cross had suffered a minimum loss of $200,000 for the purposes of the loss calculation under section 2B1.1 of the sentencing guidelines. They further stipulated, however, that the government would present evidence of an additional $70,000 of actual loss and $43,000 of attempted loss to merchants and financial institutions as well as the loss suffered by the Red Cross. This evidence, the government stated, would, if accepted by the District Court, result in a loss of more than $400,000 but less than $1 million and a base offense level increase of fourteen points. Finally, the plea agreement stated that if the Court rejected the government's argument that the base offense level should be increased by 14, the government would seek an upward departure on the ground that the guidelines did not account for the involvement of the Red Cross and the effect of the fraud on blood donations.

At sentencing, the District Court did not include in its loss analysis the damage to the Red Cross, instead using those damages as an alternative ground for granting an upward departure. The Court found that McCoy's conduct resulted in both substantial monetary damage to the Red Cross beyond the loss determined in its loss analysis and substantial non-monetary harm in the form of damage to the Red Cross's reputation. In determining the scope of the departure, the Court analogized to the guideline range that would have resulted had it included in its loss analysis the monetary damages to the Red Cross: 130–162 months. The Court then sentenced McCoy to a term of imprisonment of 162 months based on the nature of his offenses, the disastrous effect his conduct had on the Red Cross, and his extensive criminal history.

## II.

Our review of whether an upward departure was permissibly granted is plenary. *United States v. Himler,* 355 F.3d 735, 741 (3d Cir.2004). We review the reasonableness of the departure for abuse of discretion. *United States v. Murray,* 144 F.3d 270, 275 (3d Cir.1998).

■ McCoy argues that the District Court erred by not including the monetary damages to the Red Cross in its loss analysis and by not explaining why they were not included, only then to allow those damages to serve as a basis for an upward departure. He also argues that it was error for the Court to allow the non-monetary harm to the Red Cross to serve as a basis for a departure because the application notes to section 2B1.1 of the sentencing guidelines no longer expressly permit a departure based on damage to an entity's reputation or effectiveness as they did in prior versions.

Under 18 U.S.C. § 3553(b) and section 5K2.0 of the sentencing guidelines, a district court may grant an upward departure

where there exist circumstances that the guidelines do not adequately take into consideration. Application note 19(A) to section 2B1.1 of the sentencing guidelines states that an upward departure may be warranted in cases where the offense level determined under section 2B1.1 "substantially understates the seriousness of the offense." It then sets forth a non-exhaustive list of factors that a district court may consider in determining whether an upward departure is warranted, including the consideration of whether "[t]he offense caused or risked substantial non-monetary harm." The District Court relied on this ground as one of two alternative bases for granting the government's upward departure motion. It did not err in so doing.

As the government argues, the Red Cross serves a vital national interest in collecting blood donations so that our hospitals have ample blood reserves to serve their patients. The government introduced evidence demonstrating, and the District Court acknowledged, the devastating effect that McCoy's crimes had on the Red Cross's ability to collect blood within its Penn–Jersey region. When it came to be known that donors' identities had been stolen, the organization was sullied in the eyes of potential donors, including those employed by the two largest corporate donors in that region—Merck and Siemens. Indeed, the Penn–Jersey region was forced to turn to other regional offices to buy blood from them. We have affirmed the grant of an upward departure under circumstances in which an institution's reputation for service to the public was similarly tarnished. *United States v. Medford*, 194 F.3d 419, 425 (3d Cir.1999) (affirming the grant of an upward departure where defendant was convicted of stealing rare antiques from a museum, which resulted in harm to the museum's general reputation).[2] The District Court did not abuse its discretion in granting an upward departure based on these circumstances.[3]

Finally, McCoy represented himself before the District Court with court-appointed counsel serving as his standby lawyer. His plea agreement contained, as relevant here, a waiver of appeal of any issue other than the Court's grant of an unreasonable upward departure, and the waiver was discussed at, and upheld following, the plea colloquy. McCoy concedes, in his *pro se* brief submitted to us, that he waived his right to appeal, but argues that it would work a miscarriage of justice to enforce the waiver and that we should, therefore, consider the issues he raises *pro se*. We decline to do so. Local Appellate Rule 31.3 prohibits the filing of a brief *pro se* where the appellant is represented by counsel and counsel has not filed a motion to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

For these reasons, we will affirm the judgment of the District Court.

---

2. The fact that Application note 19A does not expressly include reputational harm as a basis for an upward departure did not preclude the District Court from using that harm as a basis for departure. First, as noted, Application note 19A states that the list of factors to be considered is "non-exhaustive." Second, McCoy cannot and does not dispute that the harm to the Red Cross's reputation is a form of non-monetary harm that may be considered.

3. Because we affirm on this basis, we need not address the alternative basis for granting the departure.