UNITED STATES of America

v.

Donald R. MILLER, Appellant.

No. 08–4278.

United States Court of Appeals,
Third Circuit.

Argued Sept. 14, 2009.

Opinion Filed: Feb. 5, 2010.

Ronald A. Krauss, Esq., [Argued], Office of the Federal Public Defender, Harrisburg, PA, Attorney for Appellant.

Theodore B. Smith, III, Esq., [Argued], Christian A. Fisanick, Esq., Office of the United States Attorney, William J. Nealon Federal Building and Courthouse, Scranton, PA, Attorney for Appellee.

Before: SLOVITER, FUENTES, and SMITH, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Appellant Donald R. Miller was sentenced to thirty months' imprisonment and a lifetime term of supervised release following his conviction for possession of child pornography and possession of marijuana. The District Court imposed eight special conditions of supervised release, including a restriction on internet access, mandatory computer monitoring, and a limitation on association with minors. On appeal, Miller challenges the duration of his term of supervised release and four of the eight special conditions. We agree with Miller that the lifetime limitation on internet use is a greater restraint of liberty than is reasonably necessary and that the restriction on his association with minors is overbroad. Accordingly, we will vacate and remand to the District Court for further proceedings consistent with this opinion.

## I.

In January 2004, the Federal Bureau of Investigation ("FBI") searched Miller's house after discovering that his computer had been identified (based on its IP address) as the source of images of child pornography that were uploaded onto an internet server in Utah. The FBI agents seized Miller's computer and twenty-two computer zip disks. One of the disks contained more than 1200 pornographic images. Approximately eleven of the images depicted child pornography. The adult pornography apparently included five images that could arguably be characterized as sadomasochistic. *United States v. Miller*, 527 F.3d 54, 78 (3d Cir.2008) ("*Miller I*"). The same search uncovered a small amount of marijuana in his house.

At his 2006 trial, Miller argued that he had not downloaded the child pornography images. He testified that he had never seen the images, did not knowingly copy them to the zip disk, and looked only at legal adult pornography, characterizing his collection as "[p]rimarily Playboy centerfolds." *Id.* at 74. He suggested that the images might have been downloaded by a computer hacker, noting that around the time that they were downloaded, he had been the victim of a billing fraud for a pornography website. A defense expert offered testimony that the images were among several hundred copied onto the zip disk in periodic intervals over a seven-hour period, indicating that they might have been copied automatically, perhaps by a computer virus. The expert also explained that a user might inadvertently download multiple image files when he believes he is downloading only one. This testimony was countered by a government agent, who noted that the images on the zip disk had been "extracted" and thus were not the type of "embedded" files described by the defense. *Id.* at 66. The agent also expressed doubt that anyone would hack into another person's dial-up internet connection to transmit data that would be attributed to that person's IP address, *id.*, or that any virus existed that would download child pornography onto a person's computer, *id.* at 63 n. 8.

Despite Miller's defense, the jury convicted him on three counts of the five-count Indictment: (1) knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2); (2) knowingly possessing child pornography, in violation of 18 U.S.C.

§ 2252A(a)(5)(B); and (3) possession of marijuana, in violation of 21 U.S.C. § 844(a). Miller was acquitted on two counts, transporting and shipping child pornography by computer and receiving and distributing child pornography by computer. The District Court calculated Miller's total offense level as 23, including a two-level enhancement for obstruction of justice based on his purported perjury in denying at trial that his pornography collection included any sadomasochistic images.[1] With a criminal history category of I, the advisory Guidelines range was 46 to 57 months' imprisonment. The District Court sentenced Miller to 46 months' imprisonment on the first two counts and 12 months' imprisonment on the marijuana count, to be served concurrently, and imposed a life term of supervised release for the possession of child pornography offense. At the time of the sentencing, Miller was sixty years old; he is now sixty-three years old.

In his first appeal, Miller challenged his conviction on the first two counts on several grounds, including his contention that separate convictions for receiving and possessing the same images of child pornography violated the Double Jeopardy Clause. This Court ruled in Miller's favor on the double jeopardy issue and his challenge to the obstruction of justice enhancement and remanded to the District Court to vacate one of the two child pornography convictions and resentence Miller without the obstruction of justice enhancement. *Miller I*, 527 F.3d at 54. Miller did not challenge the duration or conditions of his term of supervised release in his first appeal.

On remand, the District Court vacated the conviction for knowing receipt of child pornography and resentenced Miller solely on the knowing possession of child pornography and marijuana counts. Without the enhancement for obstruction of justice, Miller's total offense level was 19, resulting in an advisory Guidelines range of 30 to 37 months, with a mandatory supervised release term of five years to life pursuant to 18 U.S.C. § 3583(k). At an October 7, 2008 sentencing proceeding, the District Court sentenced Miller to 30 months' imprisonment to be followed by a life term of supervised release. The Court also imposed eight special conditions of supervised release, including four that are at issue in this appeal: Miller was required to participate in a sex offender treatment program at his own expense (Special Condition 1); he was barred from "associat[ing] with children under the age of 18, except in the presence of an adult who has been approved by the probation officer" (Special Condition 3); he was prohibited from using a computer with internet access "without the prior written approval of the [p]robation [o]fficer" (Special Condition 4); and he was required to submit to random inspections of his computer and permit the installation of software to monitor his computer use (Special Condition 7). (App. 6.) At the conclusion of the proceeding, Miller objected to these supervised release conditions, arguing that they were not "reasonably related to the offense conduct in this case." (*Id.* at 95.) On October 8, 2008, the District Court filed an Order formalizing the oral rulings made at the sentencing proceeding, including the vacation of the receipt of child pornography count and the entry of conviction on the possession count ("October Order"). This Order did not mention the term of supervised release. The District Court

---

1. Due to *ex post facto* concerns, the District Court used the 2003 edition of the Guidelines Manual. *See* U.S.S.G. § 1B1.11(b)(1).

filed a Judgment setting forth the full sentence on October 15, 2008. On the same day, the District Court signed a Statement of Reasons explaining the sentence, which is dated October 7, 2008.

On October 14, 2008, Miller filed a motion to correct his sentence under Federal Rule of Criminal Procedure 35(a), challenging both the supervised release term and the special conditions. On October 20, 2008, Miller timely appealed his sentence to this Court. In a November 17, 2008 Order (the "November Order"), the District Court granted the Rule 35(a) motion in part. While acknowledging Miller's appeal, the Court stated that it still had jurisdiction to address the Rule 35(a) motion because the Government had not challenged its jurisdiction. In addition, the District Court relied on Federal Rule of Appellate Procedure 4(b)(5), which states that the filing of a notice of appeal "does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a)."

In substance, the November Order largely affirmed the supervised release term and the conditions imposed in the October sentencing, but it contained a much more thorough explanation of the Court's reasoning. The District Court justified the lifetime term based on the high rate of recidivism among sex offenders and a Sentencing Guidelines policy statement recommending the imposition of the statutory maximum supervised release term on convicted sex offenders, including child pornography offenders. The District Court also relied on Miller's mischaracterization of the nature of his pornography collection as "Playboy centerfold[ ]" images, despite his possession of five images allegedly depicting sadomasochism, and his continuing denial of any involvement in the possession of child pornography. Lastly, the District Court explained that the life-

time term was not greater than reasonably necessary as it could be terminated if, in the future, there was no need to continue Miller's supervision. As to the special conditions, the District Court indicated that the factors supporting the lifetime term also provided a basis for each of the four restrictions at issue.

The November Order altered Miller's sentence in two respects. First, the District Court agreed that Special Condition 3—the bar on Miller's association with minors—was overly broad based on a non-precedential decision of this Court rejecting similar language. *See United States v. Smyth*, 213 Fed.Appx. 102, 106–07 (3d Cir. 2007). Therefore, the Court modified the condition to include exceptions for "brief, unanticipated, and incidental contacts" with minors and for contacts with Miller's own family members or children. (App. 107.)

Second, although disagreeing with Miller's characterization of Special Conditions 4 and 7 as imposing a complete ban on his ability to access the internet, the District Court sought to minimize confusion by moving the text of Special Condition 7 to the end of Special Condition 4 "so that both conditions are read together." (*Id.* at 108.) This new, combined special condition reads as follows:

The defendant shall not use a computer with access to any "on-line computer service" without the prior written approval of the [p]robation [o]fficer. This includes any [i]nternet service provider, bulletin board system, or any other public or private computer network[.] The defendant shall submit to an initial inspection by the U.S. Probation Office and to any examinations during supervision of the defendant's computer and any devices, programs, or applications. The defendant shall allow the installation of any hardware or software sys-

tems which monitor or filter computer use. The defendant shall abide by the standard conditions of computer monitoring and filtering that will be approved by this Court. The defendant is to pay the cost of the computer monitoring, not to exceed the monthly contractual rate, in accordance with the probation officer's direction[.]

(*Id.* at 106–07.) In all other respects, the District Court denied Miller's Rule 35(a) motion. On appeal, Miller challenges the sentence imposed by the District Court, arguing that the lifetime duration of his term of supervised release and Special Conditions 1, 3, 4, and 7 subject him to a greater deprivation of liberty than is reasonably necessary.[2]

## II.

We first address the Government's argument that Miller has waived any right to challenge his sentence. According to the Government, Miller waived the arguments that he now advances by failing to raise them during his first appeal to this Court; therefore, the District Court's judgment must be affirmed in all respects. Miller disagrees, arguing that because his second sentencing was de novo, the arguments were not waived and we are therefore free to review his challenge to the length of his term and the special conditions of his supervised release. Should we agree with Miller, we must also determine whether our review is limited to the District Court's October Order, which offers limited reasoning for the Court's sentencing decision, or if we can consider the District Court's November Order ruling on Miller's motion under Federal Rule of Criminal Procedure

35(a), which contains a more detailed statement of reasons but was issued beyond the seven-day period required by Rule 35(a).

## A. Waiver

■ Although the District Court imposed the same lifetime term and special conditions in the original sentencing in this case, Miller did not challenge the supervised release aspect of his sentence in his first appeal. Consequently, the Government, invoking the authority of *United States v. Pultrone*, 241 F.3d 306 (3d Cir. 2001), contends that Miller waived his arguments regarding his term of supervised release.[3]

Pultrone had been convicted of attempted possession of cocaine with intent to distribute and was sentenced to 76 months' imprisonment. Pultrone filed an appeal, and the Government cross-appealed on the ground that the district court had failed to apply a mandatory statutory minimum sentence of ten years' imprisonment. Pultrone voluntarily withdrew his appeal; we remanded for application of the statutory minimum. Pultrone was accordingly sentenced to 120 months' imprisonment, a sentence he appealed. Assessing whether we had jurisdiction over the second appeal, we held that Pultrone had waived all of the arguments contained therein because "[e]ach of these allegations of error could and should have been raised in that [first] direct appeal; because Pultrone voluntarily withdrew the appeal, he failed to preserve these issues." *Id.* at 307; *accord United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002) (holding that the law of the case doctrine forecloses the appellate

---

2. The District Court had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3742(a). We have jurisdiction to review Miller's sentence under 28 U.S.C. § 1291.

3. Whether Miller waived his right to appeal the reasonableness of the duration and special conditions of his term of supervised release is a question of law, over which we exercise plenary review. *See United States v. Price*, 558 F.3d 270, 277 (3d Cir.2009).

court from reconsidering issues decided by a previous appellate panel or previously waived by the defendant); *United States v. Marmolejo*, 139 F.3d 528, 530–31 (5th Cir. 1998) (holding that the defendant had waived his argument regarding the obstruction of justice enhancement as he did not raise it on appeal from his original sentencing); *United States v. Walterman*, 408 F.3d 1084, 1085–86 (8th Cir.2005) (same); *United States v. Whren*, 111 F.3d 956, 959–60 (D.C.Cir.1997) (same). Accordingly, we dismissed Pultrone's second appeal for lack of jurisdiction. *Pultrone*, 241 F.3d at 308.

■■■ *Pultrone* and the other court of appeals cases we cite recognize an exception to the waiver doctrine. "[W]hen a case is remanded for *de novo* resentencing, the defendant may raise in the district court and, if properly preserved there, on appeal to the court of appeals, issues that he or she had previously waived by failing to raise them." *Quintieri*, 306 F.3d at 1225. In contrast, in *Pultrone*, we were addressing a limited resentencing rather than a de novo proceeding. 241 F.3d at 308. In that posture, we noted that as the proceeding on remand "reflected only our direction that the statutory minimum sentence be imposed" and "because Pultrone abandoned his appeal, no other aspect of his conviction or sentence was at issue. In this circumstance, '[t]he grant of remand on appeal does not reopen the order appealed from....'" *Id.* (quoting *United States v. Mendes*, 912 F.2d 434, 437–38 (10th Cir.1990)); *accord Whren*, 111 F.3d at 960 (instructing that "upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision....."); *Marmolejo*, 139 F.3d at 531 (same); *Walterman*, 408 F.3d

at 1085 (same). As stated in *Quintieri*, however, when the resentencing is de novo rather than limited, issues concerning the first sentence that were previously waived may be raised in the first instance if warranted by the second sentence. Miller argues that this exception applies because his second sentencing was essentially de novo.

Our sister circuits are divided over whether a district court absent specific direction should generally treat a vacation and remand of a sentence as a de novo resentencing or as a limited proceeding in which the sentencing court revisits only the particular issues identified as grounds for remand. *See Quintieri*, 306 F.3d at 1228 n. 6 (collecting cases on both sides of the circuit split). In those circuits that have adopted a de novo sentencing default rule, resentencing is de novo absent explicit direction otherwise from the remanding appellate court. *See, e.g., United States v. Jennings*, 83 F.3d 145, 151 (6th Cir.1996) (creating a default rule of de novo resentencing), *amended by* 96 F.3d 799 (6th Cir.1996); *United States v. Cornelius*, 968 F.2d 703, 705–06 (8th Cir.1992) (same); *United States v. Ponce*, 51 F.3d 820, 826 (9th Cir.1995) (same); *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir.1996) (same).

Other circuits follow a default rule of limited resentencing, in which resentencing is not considered to be de novo unless expressly designated as such. In these circuits, "upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." *Whren*, 111 F.3d at 960; *accord United States v. Wallace*, 573 F.3d 82, 88 & n. 5 (1st Cir.2009); *United States v. Lee*,

358 F.3d 315, 321 (5th Cir.2004); *United States v. Husband*, 312 F.3d 247, 250–52 (7th Cir.2002). The Second Circuit splits the difference, holding as follows:

> [W]hen a sentencing results from a vacatur of a conviction, we in effect adhere to the *de novo* default rule.... But when a resentencing is necessitated by one or more specific sentencing errors, unless correction of those errors would undo the sentencing calculation as a whole ..., we in effect adhere to the ... default rule of limited resentencing.

*Quintieri*, 306 F.3d at 1228 n. 6 (internal citations omitted).

■ We do not need to determine which default rule is appropriate here because it is well established that when the remand includes instructions to vacate at least one interdependent count of conviction, a de novo sentencing is appropriate. *See United States v. Davis*, 112 F.3d 118, 122 (3d Cir.1997). In *Davis*, we endorsed the "sentencing package doctrine," which instructs as follows:

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When a conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand ... if that appears necessary in order to ensure that the punishment still fits both crime and criminal.

*Id.* (citation & internal quotation marks omitted); accord Quintieri, 306 F.3d at 1228 ("[R]esentencing usually should be de novo when a Court of Appeals reverses one or more convictions and remands for resentencing ...." (emphasis omitted));

*cf. United States v. Goggins*, 99 F.3d 116, 118 (3d Cir.1996) ("[I]f convictions on some counts of a multi-count indictment are vacated the court may resentence the defendant to enhanced sentences on the remaining counts.").

In cases subsequent to *Davis*, we stressed that the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts were *interdependent*. *McKeever v. Warden SCI–Graterford*, 486 F.3d 81, 87–88 (3d Cir.2007); *United States v. Murray*, 144 F.3d 270, 273 n. 4 (3d Cir.1998). Interdependent offenses "result in an aggregate sentence, not sentences which may be treated discretely." *Murray*, 144 F.3d at 273 n. 4. Applying this test, we conclude that the sentences on Miller's two child pornography counts were interdependent, such that the sentencing package doctrine applied, and Miller's second sentencing was de novo. Accordingly, the term and conditions of supervised release were squarely at issue during the second sentencing, and Miller did not waive his current challenges by failing to raise them in his first appeal.

When computing Miller's total offense level at the original sentencing, the District Court grouped the two child pornography counts pursuant to U.S.S.G. § 3D1.2(d), which provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule ... [w]hen the offense level is determined largely on the basis of ... some ... measure of aggregate harm ....." The Introductory Commentary to Part 3D explains the policy underlying the grouping of interrelated counts:

> Some offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that con-

viction for them ordinarily would not warrant increasing the guideline range. For example, embezzling money from a bank and falsifying the related records, although legally distinct offenses, represent essentially the same type of wrongful conduct with the same ultimate harm, so that it would be more appropriate to treat them as a single offense for purposes of sentencing. . . .

In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.

Section 3D1.2 specifically provides that offenses covered by the Guideline provisions applicable to Miller's child pornography offenses—U.S.S.G. §§ 2G2.2 and 2G2.4—are to be grouped. When offenses are grouped pursuant to § 3D1.2(d), the offense level applicable to that Group is the Guideline "that produces the highest offense level." *Id.* § 3D1.3(b). The child pornography counts and the possession of marijuana count involved unrelated acts and were not so grouped. For Miller's grouped offenses, the receipt of child pornography count produced the highest offense level—17—and this was used as the base offense level. *See id.* § 2G2.2. Ultimately, the District Court sentenced Miller to 46 months' imprisonment on the grouped child pornography counts. This "constituted an aggregate sentence that was based upon the . . . interdependence" of the child pornography counts. *Davis,* 112 F.3d at 123. As the offenses were grouped, they "result[ed] in an aggregate

sentence, not sentences which may be treated discretely." *Murray,* 144 F.3d at 273 n. 4.

In Miller's first appeal, we remanded the case to the District Court to correct the erroneous entry of separate convictions on the two duplicative child pornography counts in violation of the Double Jeopardy Clause. *United States v. Miller,* 527 F.3d 54, 72 (3d Cir.2008). The District Court left the possession count in place and vacated the receipt count. In recalculating Miller's offense level for the possession count, the District Court could not rely on a discrete sentence previously imposed for that offense. Instead, the District Court had to ungroup the two offenses and determine the base offense level applicable to the possession count alone—15. *See* U.S.S.G. § 2G2.4. Such resentencing on one of two interrelated and grouped counts is the type of de novo proceeding contemplated in *Davis* and *Murray* rather than the limited resentencing considered in *Pultrone.* As such, the supervised release term was equally at issue in the second sentencing. While the District Court happened to impose an identical term of supervised release at the first and second sentencings, the term was imposed anew at the second sentencing, when the District Court had the freedom to craft an appropriate term and both parties had the opportunity to make arguments and raise objections. Thus, the duration and special conditions of Miller's term of supervised release were squarely presented at the second de novo sentencing, and Miller did not waive these issues by failing to challenge his term of supervised release in his first appeal. *See Quintieri,* 306 F.3d at 1225.

■ In sum, we reaffirm the sentencing package doctrine endorsed in *Davis.* When a conviction on one or more interde-

pendent counts is vacated on appeal, the resentencing proceeding conducted on remand is de novo unless we specifically limit the district court's authority. Moreover, counts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the grouped counts requires a de novo sentencing on remand unless we direct otherwise. We conclude therefore that Miller's second sentencing proceeding was de novo and that he did not waive his current challenge to the term and conditions of his supervised release by failing to raise it during his first appeal.

## B. The November Order

Before reaching the merits of Miller's appeal, we must determine whether we should confine our review to the District Court's October Judgment and Statement of Reasons ("October Judgment"),[4] or whether we may also consider the District Court's November Order responding to Miller's motion for correction of his sentence pursuant to Federal Rule of Criminal Procedure 35(a) ("Rule 35(a) Motion"). Rule 35(a) authorizes a district court to "correct a sentence that resulted from arithmetical, technical, or other clear error" at any point "within seven days after sentencing." While Miller filed his Rule 35(a) Motion on October 14, 2008, within seven days of the October 7, 2008 sentencing proceeding, the District Court's ruling on the motion was outside of the seven-day

window. In its November Order, the District Court granted Miller's motion in part, modifying Special Conditions 3, 4, and 7 (relating to contact with minors, internet access, and random computer inspections). The District Court also provided a much more thorough explanation of the reasons underlying its sentencing decisions.

 Rule 35(a)'s seven-day limitation is jurisdictional, such that a district court lacks authority to act under the Rule outside this period. *United States v. Washington*, 549 F.3d 905, 915–16 (3d Cir.2008); *United States v. Higgs*, 504 F.3d 456, 458–59, 464 (3d Cir.2007). Moreover, "the seven-day limit in the Rule does not apply to counsel's motion. It is expressly in terms of the District Court's action." *Higgs*, 504 F.3d at 458–59. This was a "deliberate" decision by the Advisory Committee, which "noted that the 'stringent time requirement' of seven days was shorter than the time for appealing the sentence so that if the court did in fact correct the sentence within the seven days, the defendant could still timely appeal the sentence if s/he so desired." *Id.* at 458 (quoting Fed. R.Crim.P. 35 advisory committee's note).

Given that both Miller and the Government acknowledged the jurisdictional bar and conceded at oral argument that we should confine our review to the October Judgment, we will not consider the November Order as part of the record on appeal.[5]

---

4. Following the October sentencing proceeding, the District Court issued three documents: (1) a Statement of Reasons dated October 7, 2008 and signed by the Court on October 15, 2008; (2) an Order dated October 8, 2008 formalizing the oral rulings made at the sentencing proceeding; and (3) a Judgment dated October 15, 2008. The October 8, 2008 Order concerns only the incarceration portion of Miller's sentence, not the term of supervised release. (App. 98.) Thus, while it

is properly before this Court, it is not relevant to Miller's challenge to his term of supervised release.

5. In his opening brief on appeal, Miller contends that we may recognize authority for the District Court's November Order under 18 U.S.C. § 3583(e)(2), which allows a district court to modify conditions of supervised release. Alternatively, Miller argues that we may view his Rule 35(a) Motion as a motion for reconsideration, which the District Court

## III.

■ Having concluded that Miller's arguments were not waived, we turn to the merits of his appeal. Miller's sole challenge is that the District Court's supervised release term and conditions in the October Judgment are outside of the bounds of 18 U.S.C. § 3583(d) and thus an abuse of discretion. Section 3583 authorizes a sentencing court to impose a condition of supervised release "to the extent that such condition-(1) is reasonably related to the factors set forth in [18 U.S.C. § 3553(a) ]; [and] (2) involves no greater deprivation than is reasonably necessary for the purposes set forth in section [3553(a) ]...." 18 U.S.C. § 3583(d)(1) & (2). The relevant factors, as delineated in § 3553(a), are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;·

(2) the need for the sentence imposed—

\* \* \*

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

Miller contends that the length of his supervised release term was longer than reasonably necessary and that Special Conditions 1, 3, 4, and 7, described *supra*, were not reasonably related to the purposes ar-

ticulated in the pertinent § 3553(a) factors.[6]

■ A sentencing judge is given wide discretion in imposing a term of supervised release. Nevertheless, that discretion is not unbounded as "[i]t must be exercised within the parameters of 18 U.S.C. § 3583." *United States v. Voelker*, 489 F.3d 139, 143 (3d Cir.2007) (citing *United States v. Crandon*, 173 F.3d 122, 127 (3d Cir.1999)). Under 18 U.S.C. § 3583(d), a court may impose a special condition of supervised release only after considering whether it is "reasonably related" to certain factors set forth in 18 U.S.C. § 3553(a): the nature of a defendant's offense and the defendant's history and characteristics; the need for adequate deterrence; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with correctional treatment including vocational training or medical care. "[I]t is not necessary for all of the factors identified in § 3553(a) to be present before a special condition of supervised release may be imposed." *United States v. Sicher*, 239 F.3d 289, 291 (3d Cir.2000). Yet, "[c]ourts generally cannot impose ... a condition—even one with a clearly rehabilitative purpose—without evidence that the condition imposed is 'reasonably related,' that is, related in a 'tangible way' to the crime or to something in the defendant's history." *United States v. Pruden*, 398 F.3d 241, 248–49 (3d Cir.2005) (quoting *United States v. Evans*, 155 F.3d 245, 249 (3d Cir.1998)). Under this standard, "a condition with no basis in the record, or with only the most tenuous basis, will inevitably

---

had inherent authority to consider. As Miller's counsel agreed at oral argument that only the October Judgment is properly before us, we decline to address either of the alternative grounds of authority for the November Order posited by Miller.

6. We review the sentence imposed by the District Court for abuse of discretion except where it "was imposed without objection," in which case we "review only for plain error." *United States v. Voelker*, 489 F.3d 139, 143 n. 1 (3d Cir.2007).

violate § 3583(d)(2)'s command that such conditions 'involve[ ] no greater deprivation of liberty than is reasonably necessary.'" *Pruden,* 398 F.3d at 249.

 We have consistently required that district courts explain and justify conditions of supervised release. *See Voelker,* 489 F.3d at 144 & n. 2; *United States v. Warren,* 186 F.3d 358, 366 (3d Cir.1999). A district court must "state the reasons in open court for imposing a particular" special condition so that the appellate court is not left to speculate about the reasons. *United States v. Loy,* 191 F.3d 360, 371 (3d Cir.1999) (citations omitted). Where the court does not make clear why it imposed a given condition, "we cannot properly review [a defendant's] abuse of discretion claim" challenging the condition and may therefore remand to the district court for further explanation. *Id.* Alternatively, we may affirm the condition if we can "'ascertain any viable basis for the ... restriction in the record before the District Court....'" *Voelker,* 489 F.3d at 144 (quoting *Warren,* 186 F.3d at 367).[7]

 Miller challenges both the lifetime term and the four special conditions set forth above. In *Voelker,* faced with similar arguments, we concluded that we did not need to "separately address [Voelker's] challenge to the term of his supervised release. Our discussion of the propriety of the conditions imposed on that term applies to duration of the term with equal force." *Id.* We cannot truly assess the propriety of the length of the term of supervised release without considering the restrictiveness of the conditions imposed. We will adopt this approach in the instant case and "focus on the propriety of the conditions of the supervised release."[8] *Id.*

## A. Special Conditions 4 and 7— Internet Ban and Computer Monitoring

 As previously stated, Special Condition 4 prohibits Miller from "us[ing] a computer with access to any 'on-line computer service' without the prior written approval of the [p]robation [o]fficer." (App. 6.) This includes any computer with

7. For the reasons that follow, we conclude that some of the special conditions of Miller's term of supervised release are substantively unreasonable, and we remand for resentencing. As we reverse on substantive grounds, we need not engage in an extensive discussion of the procedural reasonableness of the sentence. We wish to mention, however, that in the October Judgment, the District Court failed to provide an adequate justification for imposing the special conditions of supervised release currently challenged on appeal. While declining to rule on the adequacy of an order that is not properly before us, we note that the November Order provides a much more thorough explanation of the District Court's reasoning.

Inasmuch as we said in *Miller I* that Miller's testimony that to his knowledge he did not possess any sadomasochistic images could not be a basis for an obstruction of justice enhancement at sentencing, we now wish to reaffirm that the District Court should not

rely on these statements in resentencing Miller on remand. 527 F.3d at 81.

8. The Government argues that Miller did not preserve his objection regarding the term of supervised release such that it is subject to review only for plain error. (Gov't Br. 34.) We disagree. At the sentencing hearing, following the imposition of the sentence by the District Court, Miller's counsel stated "for the record, we would object to the special conditions of supervised release which you imposed today...." (App. 95.) In this moment, counsel did not expressly object to the length of the term of supervised release. Earlier in the proceeding, however, Miller's counsel asked the District Court to impose "a *reasonable* term of supervised release...." (*Id.* at 80) (emphasis added). Given the obvious conclusion that Miller's counsel would not deem a lifetime term to be reasonable, this request was sufficient to preserve Miller's objection to the lifetime duration of his term of supervised release.

access to the internet. Special Condition 7 requires Miller to submit to monitoring of his computer and "allow the installation of any hardware or software systems which monitor or filter computer use" at his expense. (*Id.*) Miller objects to these special conditions as "not reasonably related to the circumstances of the offense or [his] history" and as "so overbroad as to involve a much greater deprivation of liberty than is reasonably necessary." (Miller Br. 37.) To assess the merits of Miller's challenge, an analysis of our prior cases is instructive.

■ A series of four cases lays out our approach to supervised release conditions restricting computer and internet usage for child pornography offenders. In general, our precedent recognizes that such restrictions, as they bear on tools that are essential in modern life for legitimate purposes of communication, commerce, and information-gathering, must be narrowly tailored according to the context of the particular offense.

In *Voelker*, 489 F.3d at 142, the defendant was convicted of receipt of child pornography and sentenced to 71 months' imprisonment followed by a life term of supervised release. Voelker had also exposed the buttocks of his three-year-old daughter to another adult male over a webcam while chatting with him online, although he was not charged based on this conduct. *Id.* at 142. On appeal, Voelker challenged the length and conditions of his term of supervised release. *Id.* at 142–44. The computer-related condition prohibited Voelker from "accessing any computer equipment or any 'on-line' computer service at any location, including employment or education. This includes, but is not limited to, any internet service provider, bulletin board system, or any other public or private computer network...." *Id.* at 143.

We vacated the conditions of supervised release, explaining that "[c]onditions of supervised release must be supported by some evidence that the condition imposed is tangibly related to the circumstances of the offense, the history of the defendant, the need for general deterrence, or similar concerns [set out in § 3553(a)]." *Id.* at 144. Applying this test, we held that the outright lifetime ban on accessing computers or the internet was "the antithesis of a 'narrowly tailored' sanction," "a greater deprivation of liberty than is reasonably necessary," and "not reasonably related to the factors set forth in ... § 3583." *Id.* at 144–45. We expressed two primary concerns with the computer condition. First, we emphasized the "extraordinary breadth" of the restriction, which we described as "lifetime cybernetic banishment." *Id.* at 144, 148. We further noted that "we have never approved such an all-encompassing, severe, and permanent restriction...." *Id.* at 145. Focusing on "[t]he ubiquitous presence of the internet and the all-encompassing nature of the information it contains ..." and "the extent to which computers have become part of daily life and commerce," we found it "hard to imagine how Voelker could function in modern society given this lifetime ban on all forms of computer access and use." *Id.* at 145, 148. Second, we stressed that while "Voelker's conduct was reprehensible, he did not use his computer equipment to seek out minors nor did he attempt to set up any meetings with minors over the internet...." *Id.* at 146.

The *Voelker* court specifically distinguished *United States v. Crandon*, 173 F.3d 122 (3d Cir.1999), in which we approved a three-year supervised release term with a special condition barring the defendant from accessing the internet except as specifically approved by his probation officer. *Crandon* was distinguishable,

the *Voelker* court held, on the basis of the duration of the supervised release term; the existence of exceptions to the prohibition; and the *Crandon* defendant's use of the internet to meet and develop a relationship with a fourteen-year-old girl, which culminated in sexual relations with her. 489 F.3d at 145–46. As "Crandon used the [i]nternet as a means to develop an illegal sexual relationship with a young girl over a period of several months," we upheld the conditions of his supervised release as "narrowly tailored" and "related to the dual aims of deterring him from recidivism and protecting the public." 173 F.3d at 127–28.

While distinguishing *Crandon*, the *Voelker* court looked favorably on *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003), as "illustrat[ing] the kind of tailoring the court should have considered" in crafting the computer restriction. 489 F.3d at 146. In *Freeman*, the defendant pled guilty to receipt and possession of child pornography after being caught copying computer files of child pornography images from an undercover police officer posing as a collector of child pornography. *Freeman*, 316 F.3d at 387. Freemen subsequently admitted to molesting young boys and pursuing babysitting jobs to have the opportunity to photograph boys in the nude. *Id.* at 388. He also had two prior sexual misconduct convictions. *Id.* The sentencing court imposed a sentence of seventy months' imprisonment and five years of supervised release. *Id.* at 389. During the term of supervised release, Freeman was banned from having computer equipment in his residence and from possessing or using a computer with internet access without prior written approval of his probation officer. *Id.* at 389–90. Freeman was also subject to unannounced inspections of his residence and possessions during his supervised release term to monitor his compliance with the computer equipment ban. *Id.* at 390.

On appeal, we made clear that "[t]here is no need to cut off [a child pornography offender's] access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on [the offender's] hard drive or removable disks." *Id.* at 392. We specifically distinguished *Crandon* on the ground that the offender in that case had "used the internet to contact young children and solicit inappropriate sexual contact with them," a "use of the internet [that] is harmful to the victims contacted and more difficult to trace than simply using the internet to view pornographic web sites." *Id.* As a result, Crandon and similar offenders merited a more severe restriction, and we took care to emphasize that "[w]e are not in any way limiting our ability to ... restrict the use of computers when a defendant has a past history of using the internet to contact children." *Id.* In Freeman's case, however, "a total ban on internet access" was not warranted. *Id.* Furthermore, we added that if Freeman violated a more tailored limitation on his access to pornography websites and images, then the district court might impose a broader restriction on his internet access. *Id.*

Most recently, in *United States v. Thielemann*, 575 F.3d 265, 278 (3d Cir.2009), we upheld a computer restriction as "not disproportionate when viewed in the context of Thielemann's conduct." On his computer, Thielemann possessed several hundred pornographic images of children. *Id.* at 268. The computer also contained logs of online "chats" with Phillips, an individual with whom Thielemann had a sexual relationship. *Id.* During one of these chats, Thielemann encouraged Phillips to have sexual contact with an eight-year-old girl.

*Id.* Thielemann pled guilty to receipt of child pornography; as part of his plea agreement, Thielemann admitted to the following conduct:

> [H]e engaged in chats with Phillips, and ... during a chat, Phillips had on his lap a minor, visible to the defendant, and at the defendant's encouragement and inducement [Phillips] did simulate masturbation of the minor, and did pose the minor in order to effect the lascivious exhibition of the minor's pubic area.

*Id.* at 269 (internal quotation marks & citation omitted). Thielemann was sentenced to 240 months' imprisonment and a ten-year term of supervised release. *Id.* at 270. Pursuant to one of the special conditions of supervised release, Thielemann was prohibited from "own[ing] or operat[ing] a personal computer with [i]nternet access in a home or at any other location, including employment, without prior written approval of the Probation Office...." *Id.* (internal quotation marks omitted) (alterations in original). He did not object to this special condition before the district court, subjecting it to plain error review on appeal. *Id.*

Comparing the case to *Voelker* and *Crandon,* we concluded that "[t]he terms of Thielemann's supervised release are more analogous to those we upheld in *Crandon.*" *Id.* at 278. As Thielemann could use a personal computer as long as it was not connected to the internet and could seek permission from the Probation Office to use the internet during his ten-year restriction, "[t]he parameters of the computer restriction ... are far less troubling than those in *Voelker.*" *Id.* We further stressed that "Thielemann did more than simply trade child pornography; he utilized internet communication technologies to facilitate, entice, and encourage the

real-time molestation of a child." *Id.* As "the restriction on computer and internet use ... share[d] a nexus to the goals of deterrence and protection of the public," we held that it did "not involve a greater deprivation of liberty than [wa]s necessary" and did not constitute plain error. *Id.*

■ These cases make clear that we must consider two key factors in judging the reasonableness of Special Conditions 4 and 7. First, we must examine the scope of the supervised release condition, including both its duration and its substantive breadth—here, the degree to which access to computers and the internet is restricted. *Voelker* indicates that we cannot divorce the amount of time a special condition lasts from the question of whether that particular special condition is reasonably related to the considerations laid out in § 3553(a). Second, we must consider the severity of the defendant's criminal conduct and the facts underlying the conviction, with a particular focus on whether the defendant used a computer or the internet to solicit or otherwise personally endanger children.[9]

Assessing these two factors, in comparison to the conditions imposed in our prior cases, the limitation in Condition 4 on Miller's access to the internet is overly restrictive while Condition 7, providing for computer monitoring, is narrowly tailored and reasonable. With respect to the scope of Condition 4, for the rest of his life, Miller is confined to using a computer that does not have online access unless he receives approval from his probation officer to use the internet and other computer networks. The substantive scope of this special condition is nearly identical to the computer restriction upheld in *Thielem-*

9. This analysis accords with our recent decision in *United States v. Heckman,* 592 F.3d 400, 405-08, 2010 WL 59185, at \*3–6 (3d Cir.2010).

*ann.* It is less restrictive than the conditions that we rejected in *Freeman* and *Voelker.* Yet, while the substantive scope of Miller's condition may be less restrictive than the conditions that we previously struck down, it applies for the rest of his life. *Crandon, Freeman,* and *Thielemann* involved three-year, five-year, and ten-year terms, respectively. 173 F.3d at 125; 316 F.3d at 389; 575 F.3d at 270. In *Voelker,* however, the offender faced a lifetime term, and this duration was an important consideration in our conclusion that the condition—"lifetime cybernetic banishment"—was too restrictive. 489 F.3d at 148.

With respect to the criminal conduct at issue, both *Freeman* and *Voelker* distinguished *Crandon* on the ground that the defendant in that case had used the internet to actively contact a child and solicit sexual contact. In *Thielemann,* the defendant similarly made use of the internet to "facilitate, entice, and encourage the real-time molestation of a child." 575 F.3d at 278. Crandon and Thielemann received, respectively, three-year and ten-year terms of supervised release. Miller has not used the internet in these ways, and yet he still faces a lifetime term. While we do not intend to minimize the serious harm caused by possession of child pornography, Miller's use of the internet poses a danger that differs in both kind and degree from the conduct involved in *Crandon* and *Thielemann.*

In *Freeman,* we suggested that, on remand, the district court should impose a "more focused restriction, limited to pornography sites and images, [which] can be enforced by unannounced inspections...."

316 F.3d at 392. Special Condition 7 anticipates just this form of monitoring of or filtering of Miller's computer use. In light of this alternate, less restrictive possibility, the lifetime limitation on internet use imposed on Miller is a greater restraint of liberty than is reasonably necessary. *See* 18 U.S.C. § 3583(d)(2). Accordingly, we will vacate Special Condition 4 restricting Miller's internet access. We will also vacate Special Condition 7 requiring computer monitoring as any new conditions of supervised release should integrate a more focused restriction on internet access with the requirement of computer monitoring into a comprehensive, reasonably tailored scheme.

On remand, the District Court may impose a restriction on Miller's computer use and internet access and may require computer monitoring, but any such conditions must be appropriately tailored and in accordance with 18 U.S.C. § 3583(d)(2). In crafting these conditions, the District Court should consider their scope—both duration and substantive breadth—as well as their relationship to the facts underlying Miller's conviction, particularly his prior use of the internet. Additionally, the Court must provide a sufficiently detailed explanation of its reasoning to permit meaningful appellate review. *See Voelker,* 489 F.3d at 150. The District Court's "justification should consider the ubiquitous nature of the internet as a medium of information, commerce, and communication as well as the availability of [monitoring and] filtering software that could allow [Miller's] internet activity to be monitored and/or restricted." *Id.*[10]

---

**10.** Special Condition 5 requires Miller to submit to random searches, including searches of his computer. Miller does not challenge this condition on appeal, and it is authorized under 18 U.S.C. § 3583(d). Miller suggests that, given this general search condition, the specific computer search provision of Special Condition 7 is repetitive. This may be so, but Special Condition 7 is more specifically focused on computer searches and requires Miller to pay the cost of computer monitoring. This repetition causes no harm, and it empha-

## B. Special Condition 1—Sex Offender Treatment Program

 Special Condition 1 mandates that "[t]he [d]efendant shall participate, at the [d]efendant's expense, in a sex offender treatment program, which may include risk assessment testing, counseling, and therapeutic polygraph examinations and shall comply with all requirements of the treatment provider." (App. 6.) Miller argues that this requirement "does not reasonably relate to [his] history and characteristics[ ] and involves a greater deprivation of liberty than is reasonably necessary." (Miller Br. 30.) In particular, Miller contends that "[t]he record nowhere supports a finding that [he] has a propensity to commit any further sex crimes" and "provides no basis to conclude that [he] has an addiction to, or obsession with, child pornography . . . that needs to be treated to deter further criminal conduct." (*Id.* at 31–32.) In essence, Miller asserts that while he was technically convicted of a sex offense, he is not a sex offender "in any common sense understanding of the term" and thus cannot reasonably be required to obtain sex offender treatment. (*Id.* at 32.)

As previously stated, the District Court's October Judgment did not provide any justification for imposing Special Condition 1. Nevertheless, we may affirm the condition if our own review of the record reveals " 'any viable basis' " for the restriction. *Voelker,* 489 F.3d at 144 (quoting *Warren,* 186 F.3d at 367). In other words, the record must provide evidence that mandatory sex offender treatment "is 'reasonably related,' that is, related in a 'tangible way' to [Miller's] crime or to something in [his] history." *Pruden,* 398 F.3d at 248–49 (quoting *Evans,* 155 F.3d at 249). Miller correctly argues that nothing in his history supports the need for sex offender treatment. According to the PSR, before the instant convictions, Miller had no juvenile adjudications nor adult criminal convictions. Moreover, the PSR and the arguments presented at the sentencing hearing do not reference any prior history of sex offenses. Thus, the "history and characteristics of the defendant" do not justify the imposition of Special Condition 1. 18 U.S.C. § 3553(a)(1); *see also Pruden,* 398 F.3d at 249.

Sex offender treatment is, however, related in a tangible way to Miller's crime of conviction, the other *Pruden* factor. It is true, as Miller contends, that the number of images of child pornography that he possessed—eleven—pales in comparison to the hundreds of images of adult pornography. Yet, despite Miller's attempts at minimization, possession of child pornography is classified as a sex offense. Furthermore, possession of even a small number of images of child pornography contributes to the victimization of children and " 'creates a market' " for child abuse. *See United States v. Goff,* 501 F.3d 250, 259–60 (3d Cir.2007) (citing *Osborne v. Ohio,* 495 U.S. 103, 109–12, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990)) (further citation omitted). Moreover, "[t]here is ample evidence of Congress's intent that offenses involving child pornography be treated severely." *Id.* at 258 n. 13. In light of the nature and seriousness of the offense, there is a need to both deter others from similar crimes and to protect the public from any further crimes by Miller. *See* 18 U.S.C. § 3553(a)(2)(B) & (C). Sex offender treatment is reasonably related to these deterrent and preventive goals.

---

sizes that the purpose of the computer searches is to ensure that Miller is not visiting any child pornography websites. For these reasons, the more general search provision contained in Special Condition 5 does not render Special Condition 7 unnecessary.

Miller's current argument can be construed as another attempt to assert his innocence of the offense of possession of child pornography. We addressed this challenge thoroughly in *Miller I*, where, after considering all of the evidence in its totality, we upheld the jury's verdict that Miller knowingly received child pornography. 527 F.3d at 69. In light of Miller's conviction for possession of child pornography—a sex offense—and our independent review of the record, we cannot say that there is no basis supporting the special condition requiring sex offender treatment. Accordingly, we will affirm the District Court's imposition of Special Condition 1, requiring that Miller participate in a sex offender treatment program.

## C. Special Condition 3—Association with Minors

■ Miller appeals Special Condition 3, the associational condition, which, as stated in the October 15, 2008 Judgment, provides that "[t]he [d]efendant shall not associate with children under the age of 18 except in the presence of an adult who has been approved by the probation officer[.]" (App. 6.) Miller argues that the "record does not support the conclusion that he is a danger to minors.... Thus, [S]pecial [C]ondition 3's restriction on his association with minors is not reasonably related to Miller or his offense[ ] and subjects him to a greater deprivation of liberty than is reasonably necessary." (Miller Br. 34–35.) In particular, Miller objects to Special Condition 3 as it prohibits him from being in contact with family members under the

age of eighteen and thus "severely chill[s][his] ability to engage in family gatherings." (*Id.* at 36.)

In his Rule 35(a) Motion following the imposition of sentence, Miller raised the same challenges to Special Condition 3. In its November Order, the District Court agreed with Miller that it was "improper as written." (App. 107.) In response to Miller's arguments, the District Court modified Special Condition 3 to allow for contact with family members under the age of eighteen; the modified condition reads as follows: "With the exception of brief, unanticipated, and incidental contacts, the [d]efendant shall not associate with children under the age of 18 except for family members or children in the presence of an adult who has been approved by the probation officer...." (*Id.*) In its brief on appeal, the Government asserts that the District Court lacked jurisdiction to enter the November Order but "agree[s] that this Court should modify the condition to the same degree the [D]istrict [C]ourt attempted to modify it." (Gov't Br. 44.)

As discussed in Part II.B, *supra*, the District Court lacked the authority to enter the November Order, which is not now before us. Nevertheless, Special Condition 3, as modified in the November Order, appears to accord with our precedent,[11] address Miller's overbreadth concerns, and satisfy the Government. Accordingly, we will vacate this special condition of supervised release and remand with the di-

---

**11.** In *United States v. Loy,* 237 F.3d 251, 268 (3d Cir.2001), we addressed challenges to a similar associational condition. We noted that "associational conditions placed upon parolees and probationers ... have frequently been challenged as overly broad or vague because they potentially extend to casual encounters. At this point, it is well established that associational conditions do not extend to

casual or chance meetings." *Id.* at 268–69 (internal citations omitted). We further explained that even when such conditions do not expressly exempt chance meetings, we read such an exception into the condition so that "accidental or unavoidable contact with minors in public places is not forbidden...." *Id.*

rection that the District Court may include the modified version of Special Condition 3 in Miller's new sentence justified by reference to Miller's history or offense of conviction.

## IV.

For the foregoing reasons, we will vacate and remand to the District Court for further proceedings consistent with this opinion.