NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1016
_____

UNITED STATES OF AMERICA

v.

ROBERT B. LYNN,
                                        Appellant


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00279-003)
District Judge: Honorable Alan N. Bloch
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 26, 2012

Before:   HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges.*

(Opinion Filed:  March 11, 2013)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

At issue in this appeal is whether the District Court erred in denying Appellant

Robert B. Lynn's motion for a mistrial based upon the Government's reference to Lynn's

ability to testify when arguing an evidentiary objection in the presence of the jury, and

whether the District Court's curative instruction regarding the Government's comment

was adequate. Also at issue is whether the District Court improperly punished Lynn for exercising his right to proceed to trial by imposing a lengthier prison term than was imposed on a co-defendant who pled guilty. Finding no error in the District Court's denial of Lynn's motion for a mistrial, curative instruction or sentence, we will affirm.

I.

Since we write principally for the parties, we set forth only the facts essential to our analysis.

Lynn was charged with multiple counts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344), as well as one count of conspiracy to commit fraud (18 U.S.C. § 1349). The charges against Lynn arose from his role in an accounting scheme in which he and several of his coworkers at Le-Natures, Inc. ("LNI") defrauded banks and investors. The loss exceeded $660 million. In essence, LNI, a beverage company, kept two separate accounting systems: one that was accurate and another that was inflated with false records. Lynn and his co-conspirators used the false records to obtain loans and investments for the company. Lynn served as executive vice president at LNI and at various times was LNI's chief sales officer, chief revenue officer, general manager, and board member.

Lynn was the only one of the LNI officials charged in the fraudulent scheme who did not plead guilty. During his trial, defense counsel cross-examined a Government witness about the identification of handwritten percentages on the bottom of a production forecast. The witness, the former manager of production planning and inventory control at LNI, testified he did not recognize the handwriting. Defense counsel then asked the

2

witness about a possible interpretation of what the handwritten percentages might have meant. The Government objected and stated: "Objection, Your Honor. The witness doesn't know whose handwriting this is and is asked to be—speculate. And if we had some factual basis, if Mr. Lynn wants to testify but—." (App. 780.) At that point, defense counsel objected and moved for a mistrial, which the District Court immediately denied.

After completion of the examination of the witness and the dismissal of the jury, defense counsel elaborated upon the grounds for his motion for a mistrial, asserting that the Government's reference to Lynn and his ability to lay an evidentiary foundation if he wished to testify violated his Fifth Amendment right against self-incrimination. The District Court took the motion under consideration. Before the Court reconvened several days later,[1] Lynn filed a renewed motion for a mistrial, or, in the alternative, for a curative instruction. While the District Court denied the motion for a mistrial, it granted the motion for a curative instruction but chose not to use Lynn's proposed instruction.

Out of the presence of the jury, the District Court read the instruction it intended to give. Lynn did not object to the proposed instruction. When the jury returned to the courtroom, the District Court gave that same instruction:

> Before we adjourned Tuesday, Mr. Farrell [defense counsel] asked a witness, Mr. Waller, some questions regarding handwriting on one of the exhibits, which was Government Exhibit 4062. In the course of doing so, he asked the following question: Quote, now, if you look at these percentages, in your experience, do these percentages of 12 percent, or the fifth entry, or fifth month of the year, was that

---

[1] The trial was postponed several days due to the Trial Judge's illness.

roughly equivalent to, in your experience, what was sold in May as percent of the year?, end of quote. Mr. Cessar [Government counsel] objected, stating, quote, objection, Your Honor. The witness doesn't know whose handwriting this is, and is asked to be, and is asked to be -- and then, the word "to" was left out, speculate. And if we have some factual basis, if Mr. Lynn wants to testify, end of quote. You should remember that a defendant has an absolute right not to testify. The fact that a defendant does not testify should not be considered by you in any way, or even discussed in your deliberations. I remind you that it is up to the government to prove the defendant guilty beyond a reasonable doubt. It is not up to the defendant to prove that he is not guilty.

(App. 800-01.) Lynn did not raise an objection after the curative instruction was delivered to the jury.

Because Lynn ultimately chose not to testify at trial, the District Court also instructed the jury in its final charge:

> Remember that a defendant has an absolute right not to testify or offer evidence. The fact that a defendant did not testify or offer any evidence should not be considered by you in any way or even discussed in your deliberations, I remind you that it is up to the government to prove the defendant guilty beyond a reasonable doubt. It is not up to the defendant to prove that he is not guilty.

(App. 1765.) Lynn did not object after the District Court gave the jury its final charge.

The jury returned a verdict of guilty on seven counts of wire fraud, two counts of bank fraud, and the conspiracy count.[2] The presentence investigation report prepared by the Probation Office calculated the United States Sentencing Guidelines range to be 324 to 405 months' imprisonment based on a total offense level of 41 and a criminal history

---

[2] The jury acquitted Lynn on ten other counts and was unable to reach a verdict on five counts.

4

category of I. Lynn requested a substantial downward variance, from 324 months to a prison term of 150 months, a sentence he viewed as comparable to the 120-month prison term received by Andrew Murin, a co-defendant who pled guilty but did not cooperate with the Government.[3] The District Court did grant the request for a downward variance based upon Lynn's age—he was sixty-seven years old—and his law-abiding prior history, but declined to go as far as Lynn requested. Instead, the District Court imposed a prison term of 180 months.[4]

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## A.

Lynn first argues that the Government's reference to his ability to testify at trial violated his Fifth Amendment privilege against self-incrimination, warranting a mistrial. In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that prosecutors may not make comments suggesting that a defendant's invocation of his or her right not to testify at trial is evidence of guilt. *Id.* at 615. "A remark is directed to a defendant's silence when the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused

---

[3] Two cooperating co-defendants, Donald Pollinger and Jonathan Podlucky, received prison terms of sixty months. The remaining co-defendant charged in the indictment along with Lynn, Gregory Podlucky, received a sentence of 240 months' imprisonment.

[4] The District Court also imposed a five-year term of supervised release and restitution of over $660 million.

to testify." *United States v. Brennan*, 326 F.3d 176, 187 (3d Cir. 2003) (citation and internal quotation marks omitted). "In making this determination, we must examine the challenged prosecutorial remark in its trial context." *Lesko v. Lehman*, 925 F.2d 1527, 1544 (3d Cir. 1991) (citations omitted). If the defendant's constitutional rights were violated, we will not reverse the conviction if the error was harmless. *Id.* at 1546.

While the Government's statement that "if we had some factual basis, if Mr. Lynn wants to testify but—," (App. 780), during its foundational objection to defense counsel's question of a witness on cross-examination was not appropriate, we conclude that it did not rise to the level of a constitutional error under *Griffin*. The Government objected to defense counsel's question of the witness asking him to interpret handwritten percentages on a production forecast. The witness had already testified that he could not identify the handwriting on that document. Therefore, presumably because the witness did not know the origin of the written percentages, the Government objected on the ground that the witness's interpretation of the meaning of the handwriting would be improper speculation. Read in context, we do not find that the Government's comment about Lynn being able to provide an evidentiary foundation was "manifestly intended" to be a comment on Lynn's failure to testify. *See Brennan*, 326 F.3d at 187. Rather, it appears that the Government intended the comment to demonstrate the lack of foundation on which the witness could base its interpretation of the handwritten numbers.

Nor is it evident "that the jury would naturally and necessarily take [the Government's reference to Lynn] to be a comment on" Lynn's silence as evidence of his guilt. *See id.* As other Courts of Appeals have recognized, "'[t]he question is not

6

whether the jury possibly or even probably would view the remark in this manner, but whether the jury *necessarily* would have done so.'" *United States v. Nelson*, 450 F.3d 1201, 1213 (10th Cir. 2006) (quoting *United States v. Garcia*, 13 F.3d 1464, 1474 (11th Cir. 1994)); *accord United States v. Davis*, 609 F.3d 663, 685 (5th Cir. 2010); *United States v. Carl*, 978 F.2d 450, 452 (8th Cir. 1992). When examined in context, we do not conclude that the jury *necessarily* would have viewed the Government's remark as a comment on Lynn's failure to testify as evidence of his guilt. Indeed, the Government's statement was not directed to the jury, but was instead made in the context of an evidentiary objection. The remark was abrupt, being immediately cut off by defense counsel's assertion that the reference to Lynn being able to testify was improper.

Even if we did construe the Government's remark as a comment on Lynn's failure to testify, the District Court's curative instruction was sufficient to render any error harmless. After the District Court initially denied Lynn's immediate oral motion for a mistrial, defense counsel quickly finished his cross-examination of the witness and the Government conducted a short redirect-examination. At that time, the District Court dismissed the jury at defense counsel's request so that he could explain the basis for his motion for a mistrial before the District Court adjourned for the day. When the District Court reconvened after the District Judge's illness, the first thing the jury heard, after a brief explanation of the Judge's illness, was the District Court's curative instruction. In that instruction, the District Court directly addressed the Government's comment and reminded the jury of Lynn's constitutional right not to testify, that a defendant's failure to "testify should not be considered by you in any way, or even discussed in your

7

deliberations," and that the Government, rather than the defendant, had the burden of proof. (App. 800-01.) Clearly implicit in that instruction was the notion that the Government should not have made such a comment and the jury was to disregard it. If any ambiguity as to the meaning or interpretation of the Government's remark existed, the District Court's curative instruction was sufficient to neutralize any error. Accordingly, we conclude that the District Court did not err in denying Lynn's motion for a mistrial.

B.

Lynn also argues that his 180-month prison sentence created an unwarranted disparity, under 18 U.S.C. §3553(a)(6), with the 120-month sentence of a co-defendant, Andrew Murin, who pled guilty but did not cooperate with the Government. Lynn contends that his sentence should have been 150 months, which he asserts would have been commensurate with Murin's sentence save for the reduction Murin received for his acceptance of responsibility.

Although the District Court did vary downward from the 324 to 405-month Guidelines range based on Lynn's age and previously law-abiding background, it rejected Lynn's request for a 150-month sentence. The District Court noted that Murin's and the other co-defendants' sentences were based on their negotiated agreements with the Government. The District Court further explained:

> The defendant chose to put the government to the burden of proving his guilt, rather than accept responsibility for his actions. In this case, that is no small thing, as the month-long trial substantially taxed the resources of the government and the Court.

8

> He cannot choose to take the risk of trial, and then, assert that he is entitled to the benefit of the same sentences his co-defendants negotiated with the government. Thus, any disparities between the defendant's sentence and those of his co-defendants are not unwarranted.

(App. 1878.) Based on those comments, Lynn argues that the District Court penalized him for exercising his right to go to trial.

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).[5] "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

Lynn does not challenge the procedural reasonableness of his sentence. Lynn argues that his sentence was substantively unreasonable because it was sixty months longer than a co-defendant who pled guilty but did not cooperate with the Government. We have held that "a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences" because that provision "does not require district courts to consider sentencing disparity among co-defendants . . . ." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). In addition, because Murin

---

[5] The parties dispute whether Lynn preserved this sentencing issue in the District Court, with the Government asserting that we should employ plain error review and not the abuse of discretion standard. Because Lynn's argument fails even under an abuse of discretion standard, we need not decide whether to review Lynn's sentencing under an abuse-of-discretion standard or for plain error. *See United States v. Miller*, 594 F.3d 172, 183 n.6 (3d Cir. 2010) ("We review the sentence imposed by the District Court for abuse of discretion except where it was imposed without objection, in which case we review only for plain error." (citation and internal quotation marks omitted)).

9

pled guilty to one count of mail fraud, and Lynn was convicted of ten felony counts, including wire fraud, bank fraud, and conspiracy, Lynn and Murin were not similarly situated, thus precluding Lynn's invocation of § 3553(a)(6). Indeed, Murin's advisory Guidelines range was 210 to 262 months, whereas Lynn's range was 324 to 405 months, demonstrating that they were not at all situated alike. Furthermore, if the starting point in the comparability analysis is the bottom of the respective advisory Guidelines ranges for Murin and Lynn, a sentence of 180 months reflects a 44% downward adjustment, comparable to the 43% downward variance from the bottom of Murin's advisory Guidelines range.[6]

Furthermore, we perceive the District Court's comments merely to have been an explanation for why it rejected Lynn's assertion that his sentence should have been 150 months to avoid an unwarranted disparity with Murin. As the District Court noted, because Lynn did not plead guilty and instead went to trial, he was not entitled to a sentence similar to co-defendants who accepted responsibility for their actions. The District Court's explanation of the policy reasons for adjusting defendants' sentences when they accept responsibility does not amount to a "penalty" for Lynn's decision to go to trial.

We find Lynn's 180-month prison sentence to be substantively reasonable. The Guidelines imprisonment range was 324 to 405 months. The District Court varied substantially from the bottom end of that range based on Lynn's age and previously law-

_____

[6] The sentence requested by Lynn, 150 months' imprisonment, would have represented a downward variance of 54%, a much greater reduction in relative terms than Murin had received.

10

abiding history. Given the magnitude of the fraud and loss in this case, we cannot conclude that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.